MARTHA RAMIREZ, Indiv. and as Parent, Next Friend, and Guardian of the Estate of Gamaliel Ramirez, a Minor, Deceased, Plaintiff-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—01—0608

Opinion filed June 11, 2002.

Anmarie C. Brandenburg, of Mateer & Associates, of Rockford, for appellant.

Debra A. Delia, of Oliver, Close, Worden, Winkler & Greenwald, of Rockford, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals from a summary judgment granted by the trial court in favor of plaintiff, Martha Ramirez, in this declaratory judgment action. Plaintiff brought the action individually and as parent, next friend, and guardian of the estate of her deceased minor son, Gamaliel Ramirez (Gamaliel), seeking a declaratory judgment that the uninsured motorist provisions in an automobile insurance policy that State Farm had issued to her covered the damages related to Gamaliel's injuries and death. Gamaliel's death resulted from gunshots fired from an uninsured vehicle at plaintiff's car while Gamaliel was driving plaintiff's car. For the reasons that follow, we conclude that the uninsured motorist provisions of plaintiff's policy did not provide coverage and reverse the summary judgment.

The material facts are not in dispute. Around midnight on November 1, 1997, Gamaliel was driving plaintiff's car in Rockford. Antonio Ramirez, the only passenger in the car, was sitting in the front passenger seat. Another car, driven by Jasim Mohamed Albaiaty, began to follow plaintiff's car. There were two passengers in Albaiaty's car, Ricardo "Ricky" Diaz and Rey Velarde. Gamaliel attempted to get away from Albaiaty's car. However, Albaiaty's car continued to follow plaintiff's car for about 40 blocks.

When Gamaliel slowed plaintiff's car for a railroad crossing, Albaiaty's car pulled next to the driver's side of plaintiff's car. Velarde, one of the passengers in Albaiaty's car, then fired about 10 or 11 gunshots at plaintiff's car. One of the gunshots hit Gamaliel in the left arm and passed into his chest. After Velarde fired the shots, Albaiaty's car briefly came into contact with plaintiff's car. Albaiaty's car then sped away.

Shortly after being shot, Gamaliel passed out and was unable to maintain control of plaintiff's car. Plaintiff's car then left the road, struck some property near a building, and eventually hit a light pole.

Gamaliel was taken to a hospital where he received emergency treatment. Gamaliel died at the hospital. The cause of Gamaliel's death was the gunshot wound to the chest.

Albaiaty and Velarde were charged with the murder of Gamaliel. Albaiaty and Velarde each pleaded guilty to the offense. Diaz pleaded guilty to related minor offenses.

Plaintiff filed a claim with State Farm for the damages resulting from Gamaliel's injuries and death. Plaintiff sought coverage under the uninsured motorist provisions in an automobile insurance policy that State Farm had issued to plaintiff. The policy was in force on November 1, 1997.

State Farm subsequently determined that plaintiff was not entitled to coverage for the claimed damages under the uninsured motorist provisions in the policy and denied plaintiff's claim. State Farm also declined plaintiff's request to proceed to arbitration on the matter.

The uninsured motorist provisions in the policy stated, in pertinent part:

"We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*" (Emphasis in original.)

Following State Farm's denial of her claim, plaintiff filed this action seeking a declaratory judgment that she was entitled to coverage for the claimed damages under the uninsured motorist provisions of the policy. The parties filed cross-motions for summary judgment. The trial court determined that the incident in question was an "accident" and that the incident "arose out of" the use and operation of Albaiaty's uninsured vehicle. Based on these determinations, the trial court ruled that the uninsured motorist provisions in the policy provided coverage for plaintiff's claimed damages and granted plaintiff's motion for summary judgment. State Farm's timely notice of appeal followed.

On appeal, State Farm contends that the trial court erred in granting summary judgment in favor of plaintiff. State Farm acknowledges that, under the terms of the policy, Gamaliel was an insured driver and Albaiaty was an uninsured motorist. State Farm argued in its initial appellate brief that the trial court erred in determining that Gamaliel's death was caused by an "accident" and in determining that the accident "arose out of" the operation and use of Albaiaty's uninsured vehicle for purposes of the uninsured motorist provisions in the policy. However, in its reply brief, State Farm acknowledged that the parties agree that Gamaliel's injuries arose by "accident." Thus, we express no opinion whatsoever as to whether Gamaliel's death was the result of an accident. Therefore, the only issue before us is whether the trial court erred in determining that the accident "arose out of" the operation and use of Albaiaty's vehicle.

■ Familiar principles guide us in reviewing a grant of summary judgment. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000). Summary judgment is a drastic measure and therefore a court should grant summary judgment only when the movant's right to judgment is clear and free from doubt. *Outboard*

*Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review *de novo* the propriety of an order granting a motion for summary judgment. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001).

■ In construing an insurance policy, the primary objective is to ascertain and give effect to the intent of the parties to the contract. *Outboard Marine Corp.*, 154 Ill. 2d at 108. Courts should construe an insurance policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the words of a policy are clear and unambiguous, a court must afford them their plain, ordinary, and popular meaning. *Outboard Marine Corp.*, 154 Ill. 2d at 108. Conversely, if the language in a policy is susceptible to more than one meaning, it is considered ambiguous and a court should construe it strictly against the insurer that drafted the policy and in favor of the insured. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). Courts should not strain to find ambiguity in an insurance policy where none exists. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

In support of its position that the trial court erred in determining that the accident arose out of the operation and use of Albaiaty's vehicle, State Farm relies on a line of Illinois cases that involved uninsured motorist provisions in automobile insurance policies similar to the uninsured motorist provisions in the policy in this case. The cases relied on by State Farm also involved circumstances that were more or less similar to the circumstances in this case.

One of the cases relied on by State Farm is *Curtis v. Birch*, 114 Ill. App. 3d 127 (1983). In *Curtis*, the issue was whether the trial court erred in dismissing the count of a multicount complaint alleging that the uninsured motorist provisions in an automobile insurance policy provided coverage for certain damages. The damages allegedly resulted from the shooting death of a passenger in an insured car which was apparently parked at the time of the shooting. The driver of an uninsured vehicle allegedly fired the shots that killed the victim.

In *Curtis*, the appellate court affirmed the dismissal of the count in question after noting that the purpose of uninsured motorist coverage is to place the policyholder in substantially the same position he would have occupied if the wrongful driver had the minimum liability insurance required by Illinois law. *Curtis*, 114 Ill. App. 3d at 130-31. The court stated that it had not found, and was otherwise unaware of, anything that indicated "that the legislature anticipated or intended that the liability of an insurer could be established by the intentional,

criminal conduct, such as that involved here." *Curtis*, 114 Ill. App. 3d at 130-31. The court also stated that the "few cases which have allowed an insured to recover, under an uninsured motorist's provision of an auto insurance policy for intentional acts of the uninsured or unknown driver, involved injuries caused by the use of the auto as the instrumentality of the resultant injuries." *Curtis*, 114 Ill. App. 3d at 131.

Another case that State Farm relies on is *Aryainejad v. Economy Fire & Casualty Co.*, 278 Ill. App. 3d 1049 (1996). In *Aryainejad*, an uninsured motorist, Duffy, had been drinking and ran out of gas on Interstate 57. Duffy left his vehicle and began walking to a gas station. The plaintiff, Aryainejad, was driving his insured vehicle on I-57 when he encountered Duffy walking toward him in the middle of a traffic lane. In attempting to avoid hitting Duffy, Aryainejad lost control of his vehicle, crashed, and sustained serious injuries. Aryainejad later filed a claim for uninsured motorist coverage under his automobile insurance policy with the defendant insurance company. The parties filed cross-motions for summary judgment agreeing that the sole issue was whether Aryainejad's accident arose out of Duffy's ownership, maintenance, or use of his vehicle. The trial court ruled in favor of the defendant and Aryainejad appealed. *Aryainejad*, 278 Ill. App. 3d at 1050.

In *Aryainejad*, the appellate court noted that many courts throughout the country had examined "arising out of" language in automobile insurance policies and had construed the terms broadly to mean "originating from, incident to, or having a causal connection with the ownership, maintenance or use of the vehicle." *Aryainejad*, 278 Ill. App. 3d at 1051. The appellate court stated that a majority of the courts that had construed "arising out of" language held that "there must be a causal relationship between the injury and the ownership, maintenance or use of the vehicle for coverage to apply." *Aryainejad*, 278 Ill. App. 3d at 1052. The appellate court also concluded that no uniform causation standard or test for resolving the causation question had been adopted. *Aryainejad*, 278 Ill. App. 3d at 1052.

In *Aryainejad*, the appellate court evaluated various tests used by courts that focus solely on causation. These tests include the "substantial nexus" test and the "efficient and predominating cause" test. The appellate court decided that such tests did not provide an adequate analytical framework for resolving the frequently litigated issue of construing "arising out of" language. *Aryainejad*, 278 Ill. App. 3d at 1054. The appellate court then stated:

> "The better approach is to eschew such tests and follow the courts that afford coverage where the injuries resulted from an activity

that is within the risk reasonably contemplated by the parties. We therefore adopt this approach ***." *Aryainejad,* 278 Ill. App. 3d at 1054.

In applying this "reasonable contemplation" test, the *Aryainejad* court held that the injuries Aryainejad sustained as a result of Duffy's conduct were covered by the uninsured motorist provisions in Aryainejad's policy. The court determined that Duffy's conduct in running out of gas and then walking on the interstate to get more gas was within the risks contemplated by the parties to the policy because the conduct was incident to Duffy's usage of his vehicle. In distinguishing cases relied on by the insurance company, the appellate court stated:

> "We agree that an automobile must do more than merely transport a person to the site where an accident occurs for coverage to apply and that an assault by the driver of a vehicle is an act which is independent and unrelated to the ownership, maintenance or use of a vehicle. Regardless of whether a vehicle creates a condition that leads to an assault, injuries resulting from an assault are not a normal or reasonable consequence of the use of a vehicle. In other words, because physical altercations are not reasonably consistent with the inherent nature of the vehicle, they are not risks for which the parties to automobile insurance contracts would reasonably contemplate there would be coverage. On the other hand, walking down the highway after a vehicle breaks down or runs out of gas is a reasonable consequence of the use of a vehicle." *Aryainejad,* 278 Ill. App. 3d at 1054-55.

Another case that State Farm relies on is *Laycock v. American Family Mutual Insurance Co.,* 289 Ill. App. 3d 264 (1997). In *Laycock,* an uninsured vehicle chased, cut off, and forced to a stop a car insured by the defendant insurance company and driven by Steven Laycock, an insured, after the two vehicles had nearly collided. Jungles, the driver of the uninsured vehicle, then exited his vehicle, and while shouting threats and obscenities at Steven, beat Steven on the face, head, neck, and eyes through Steven's open window causing injuries to Steven. After Jungles was convicted of battery, plaintiffs obtained a civil judgment against Jungles in the amount of $15,000, but the insurance company refused to pay the damages under plaintiffs' uninsured motorist claim and refused to arbitrate. Plaintiffs then filed a declaratory judgment action against the insurance company.

In the declaratory judgment action in *Laycock,* the parties filed cross-motions for summary judgment on the issue of whether the incident in which Steven was injured arose out of the use of Jungles' uninsured motor vehicle and therefore was covered by the uninsured motorist provisions of plaintiffs' policy. The trial court determined that the uninsured motorist provisions did not apply to the incident and ruled in favor of the insurance company. Plaintiffs then appealed.

On appeal in *Laycock*, this court recognized that the words "arising out of" in an automobile insurance policy have been broadly construed to mean, *inter alia*, having a causal connection with the use of a vehicle. Nonetheless, this court determined that the uninsured motorist provisions in the policy did not provide coverage for plaintiffs because "the act of leaving the vehicle and inflicting a battery is an event of independent significance that is too remote, incidental, or tenuous to support a causal connection with the use of the vehicle despite the fact that the vehicle was used to stop and trap another vehicle." *Laycock*, 289 Ill. App. 3d at 268.

In *Laycock*, this court also applied the reasonable contemplation test that the appellate court adopted in *Aryainejad*. Under the reasonable contemplation test this court concluded that the injuries to Steven were not among the risks that the parties to the policy reasonably contemplated would be covered. This court held that the trial court correctly concluded that the policy did not provide coverage and explained its holding by referring to *Aryainejad* and stating:

"We agree that an assault by the driver of a vehicle is an act that is independent of and unrelated to the use of a vehicle and is not a normal or reasonable consequence of the use of a vehicle. Therefore, it is not a risk for which the parties to the contract reasonably contemplated there would be coverage." *Laycock*, 289 Ill. App. 3d at 269.

Another case that State Farm relies on is *State Farm Fire & Casualty Co. v. Rosenberg*, 319 Ill. App. 3d 744 (2001). In *Rosenberg*, Rosenberg, the owner of an insured vehicle, encountered a man, Tripp, in a parking lot. Tripp commandeered Rosenberg's vehicle and drove off in the vehicle with Rosenberg in the passenger seat. On the Edens Expressway, Tripp shot Rosenberg in the head and arm and then pushed her out of the vehicle while it was moving. Rosenberg subsequently filed a claim with her insurer under the uninsured motorist provisions of her automobile insurance policy (the vehicle was considered an uninsured vehicle while Tripp was driving it because Tripp was not an insured driver). In a declaratory judgment action brought by the insurance company, the parties filed cross-motions for summary judgment. The trial court found that the uninsured motorist provisions of the policy did not provide coverage for Rosenberg's injuries because the injuries were not injuries normally associated with the ownership, maintenance, or use of a vehicle and granted summary judgment in favor of the insurance company. Rosenberg then appealed.

On appeal in *Rosenberg*, the appellate court construed language in the uninsured motorist section of Rosenberg's policy that stated, in

pertinent part, that the coverage applied to an accident " 'arising out of the operation, maintenance or use of an uninsured motor vehicle.' " (Emphasis omitted.) *Rosenberg*, 319 Ill. App. 3d at 747. The appellate court discussed various cases including *Curtis*, *Aryainejad*, and *Laycock* and affirmed the trial court's grant of summary judgment in favor of the insurance company. The appellate court stated:

> "[T]he injuries sustained by defendant were the result of gunshot wounds inflicted by Tripp before he pushed defendant out of the vehicle. There was no direct connection between the injuries Rosenberg seeks compensation for and the operation or use of her vehicle. The 'accident' in this case did not arise out of the manner in which the uninsured vehicle was being driven ***." *Rosenberg*, 319 Ill. App. 3d at 748.

Here, plaintiff first responds to the cases cited by State Farm by citing two Illinois cases, *Dyer v. American Family Insurance Co.*, 159 Ill. App. 3d 766 (1987), and *Country Cos. v. Bourbon*, 122 Ill. App. 3d 1061 (1984). Plaintiff maintains that these cases show that Illinois courts have construed provisions in uninsured motorist policies to provide coverage for injuries resulting from intentional criminal acts.

Neither *Dyer* nor *Bourbon* construed "arising out of" language. The policy at issue in *Dyer* did not even contain "arising out of" language among its uninsured motorist provisions. Rather, the policy allowed uninsured motorist coverage merely for injuries that were caused by an "accident." *Dyer*, 159 Ill. App. 3d at 769. The policy in *Bourbon* contained "arising out of" language among its uninsured motorist provisions, but the *Bourbon* court did not construe this language. Rather, the court focused on whether the incident in that case should be considered an "accident." *Bourbon*, 122 Ill. App. 3d at 1066-67. Because neither *Dyer* nor *Bourbon* construed "arising out of" language, the issue that is before us in this case, plaintiff's reliance on *Dyer* and *Bourbon* is misplaced.

Plaintiff also cites a number of foreign cases. However, these cases either did not construe "arising out of" language or are unpersuasive. Accordingly, we choose not to follow any of the foreign cases cited by plaintiff.

■ Based on *Curtis*, *Aryainejad*, *Laycock*, and *Rosenberg*, we believe that the appropriate analysis for construing "arising out of" language in the context of uninsured motorist provisions of an automobile insurance policy is the reasonable contemplation test. We will therefore apply the reasonable contemplation test in this case.

■ The cause of Gamaliel's injuries and death was a gunshot that was fired from another vehicle. The shot hit Gamaliel while he was driving plaintiff's vehicle. It is true that the other vehicle was an un-

insured vehicle. However, the instrumentality of Gamaliel's injuries and death was the gun that the passenger in the uninsured vehicle fired at Gamaliel. The operation or use of the uninsured vehicle was not the instrumentality that caused the injuries and death of Gamaliel. Because the uninsured motorist provisions in plaintiff's policy allow coverage only for injuries that occurred during an accident that arose out of the operation or use of an uninsured vehicle, the plain language of the policy precludes coverage for the injuries that Gamaliel sustained as a result of the gunshot that struck him. Therefore, we conclude that it was not within the reasonable contemplation of the parties to plaintiff's automobile insurance policy that the "arising out of" language in the uninsured motorist provisions of plaintiff's policy would apply and provide coverage for the injuries that resulted from the situation that occurred in this case. Accordingly, the trial court erred when it determined that the "accident" that occurred in this case "arose out of" the operation or use of an uninsured vehicle.

Plaintiff also contends that the summary judgment in her favor should be affirmed because the "arising out of" language in the uninsured motorist provisions of the policy creates a latent ambiguity in the policy. Plaintiff asserts that the ambiguity is shown by the inconsistent construction of similar terms by various courts. Plaintiff argues that we should construe the ambiguity against State Farm and in her favor.

We disagree. Under *Curtis, Aryainejad, Laycock,* and *Rosenberg,* the term "arising out of" is sufficiently unambiguous to be tested as to its applicability in a given set of circumstances using the reasonable contemplation test. We recognize that the applicability of the term will vary with the circumstances. However, this does not render the term ambiguous.

Based on the foregoing, the judgment of the circuit court of Winnebago County is reversed.

Reversed.

McLAREN and BOWMAN, JJ., concur.