00-1406.so

No. 2--01--1460

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

GENERAL CASUALTY COMPANY OF ) Appeal from the Circuit Court

ILLINOIS, ) of Carroll County.

)

Plaintiff-Appellee, ) 

)

v. ) No. 00--MR--4

)

CARROLL TILING SERVICE, INC., )

and TODD M. CARROLL, )

) 

Defendants-Appellants )

)

(Todd M. Carroll, Third-Party )

Plaintiff-Appellant, v. Clark )

Carroll and Law Insurance ) Honorable

Agencies, Inc., Third-Party ) Richard E. DeMoss, 

Defendants-Appellees). ) Judge, Presiding.

______________________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant and third-party plaintiff, Todd M. Carroll (Todd), appeals from the order of the circuit court of Carroll County denying his motion for summary judgment and granting plaintiff General Casualty Company’s (General Casualty) cross-motion for summary judgment.  Todd also appeals the trial court’s order dismissing as time-barred his third-party complaint against third-party defendants Clark Carroll (Clark) and Law Insurance Agencies (Law).  We affirm in part, reverse in part, and remand the cause.

General Casualty filed a declaratory judgment action against Carroll Tiling Service, Inc. (Carroll Tiling), and Todd, seeking a determination that it was not required to provide workers' compensation coverage to Todd for the policy period of April 1, 1999, to April 1, 2000.  After the parties completed discovery, General Casualty and Todd filed cross-motions for summary judgment.

The undisputed facts in the record show that Todd was an employee of Carroll Tiling.  On May 14, 1999, he was injured while performing his duties for Carroll Tiling.  Todd filed a workers' compensation claim against Carroll Tiling.  General Casualty denied coverage and initiated this declaratory judgment action.

General Casualty was Carroll Tiling’s workers' compensation insurance carrier.  Carroll Tiling obtained its workers' compensation policies through Clark.  Clark worked for Law, and Law, in turn, was General Casualty’s agent.  In 1993, Carroll Tiling first obtained workers' compensation insurance from General Casualty.  At that time, J. Craig Carroll (Craig), Todd’s father and president of Carroll Tiling, was excluded from coverage under the workers' compensation policy.  (We note that the efficacy of this withdrawal, either from the operation of the Workers' Compensation Act (Act) (820 ILCS 305/1  
et
 
seq.
 (West 2000)) or from insurance coverage, is not raised by any party and we express no position on it.)

In 1997, Carroll Tiling sought to reduce its premium costs for workers' compensation insurance.  On September 15, 1997, Todd, who was Carroll Tiling’s vice president, and his mother, Vianne Carroll (Vianne), Carroll Tiling’s secretary, both executed a written form requesting to be excluded from coverage under General Casualty’s workers' compensation policy.  The form was entitled "Illinois Workers Compensation Benefits Rejection Form" and provided:

"If you are either the sole owner of your business or a business partner, Illinois’[s] workers compensation law automatically applies to you.  This means that you are automatically covered under your business workers compensation policy and that your payroll will be included when we calculate the premium for your policy.

If you do not want to be covered under this policy, you must specifically reject the coverage by signing this form and returning it to your agent."

In October 1997, General Casualty issued an endorsement, effective for the April 1, 1997, to April 1, 1998, policy period, listing Todd and Vianne as individuals excluded from coverage under the workers' compensation policy.  Instead of providing a single endorsement sheet showing that Todd, Vianne, and Craig were excluded from the workers' compensation insurance policy, General Casualty created a second endorsement sheet listing only Todd and Vianne.  Craig was listed as excluded on another typewritten endorsement.  As a result of excluding Todd and Vianne from the coverage of its workers' compensation insurance policy, Carroll Tiling’s premiums were reduced by $1,236.

At the same time that Todd and Vianne were excluded from workers' compensation coverage, Clark advised Carroll Tiling to obtain major medical insurance.  A policy providing major medical insurance covering Todd was subsequently purchased.

The record demonstrates that, following the exclusion of Todd from workers' compensation insurance coverage, Carroll Tiling did not pay any premium associated with Todd’s salary.  In fact, Vianne specifically noted on an April 28, 1998, audit form that Todd was excluded from coverage.  

When the workers' compensation policy was renewed for the period April 1, 1999 to April 1, 2000, General Casualty sent to Carroll Tiling a copy of the policy, which did not indicate that Todd was excluded from coverage; the exclusion endorsement listed only Craig as being excluded from coverage.  General Casualty explained that the omission occurred when the physical policy was assembled for renewal and the person assembling the endorsements looked only for a single exclusion endorsement.  Through happenstance, that person came upon the typewritten exclusion of Craig first.  As a result, the renewal policy was assembled with only Craig being listed on the exclusion endorsement.  General Casualty maintains that Craig, Vianne, and Todd were shown as excluded from coverage on its computerized records.  General Casualty maintains that the exclusion of Todd (and Vianne) was consistent with its billing practices after September 1997, to charge no premium for Todd’s salary, as well as consistent with the audits of Carroll Tiling’s salaries performed after September 1997.

The record demonstrates that at no time after September 1997 did anyone from Carroll Tiling ever request, either orally or in writing, to reinstate coverage for Todd under Carroll Tiling’s workers' compensation policy.  Likewise, no one from Carroll Tiling ever requested, either orally or in writing, specifically to exclude Todd from coverage at any time after September 1997.

When Todd was injured, he filed a workers' compensation claim, prompting General Casualty’s denial of coverage and the institution of this declaratory judgment action.  Thereafter, Todd filed a third-party complaint against Clark and Law.  This complaint was filed both individually and as assignee of Carroll Tiling.  Todd alleged that Clark and Law breached their fiduciary duties to him and Carroll Tiling by failing to inform Todd that his election to be excluded from coverage in 1997 would be renewed each year and by failing to make sure that Todd was covered by workers' compensation insurance.

Todd and General Casualty filed cross-motions for summary judgment.  The trial court denied Todd’s motion and granted General Casualty’s motion, finding that, by the terms of the contract at issue, unless a party took action to cancel the contract, it automatically renewed for the following year with the same terms in place as were used in the previous year.  Because there were no further negotiations to change or modify the terms of coverage between Carroll Tiling and General Casualty, the court found that Todd was excluded from coverage by virtue of the September 1997 exclusion election.  The trial court held that General Casualty had clearly and convincingly proved that the failure to include Todd on the physical copy of the exclusion endorsement was a clerical error.

In addition, Clark and Law filed a motion to dismiss, alleging that the two-year statute of limitations had run and that Todd’s claim was time-barred.  The court agreed, finding that the cause of action accrued no later than the first renewal following Carroll Tiling’s election to exclude Todd from workers' compensation coverage.  Todd timely appeals.

On appeal, Todd contends that the trial court erred by granting General Casualty’s motion for summary judgment.  Summary judgment is appropriate where the pleadings, depositions, admissions, affidavits, and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2000); 
Jones v. Chicago HMO Ltd.
, 191 Ill. 2d 278, 291 (2000).  We review the trial court’s grant of summary judgment 
de
 
novo
.  
Jones
, 191 Ill. 2d at 291.  Our function on an appeal from the grant of summary judgment is limited to determining whether the trial court correctly found that no genuine issue of material fact existed and, if that was the case, whether the trial court correctly entered judgment as a matter of law.  
State Farm Insurance Co. v. American Service Insurance Co.
, 332 Ill. App. 3d 31, 36 (2002).  Where the parties have filed cross-motions for summary judgment, they agree that there are no factual issues present and that the cause presents only legal issues to resolve.  
State Farm
, 332 Ill. App. 3d at 36.  The court must determine for itself, nevertheless, that there are no factual issues sufficient to preclude summary judgment, after which the court may determine the issues presented as questions of law.  
State Farm
, 332 Ill. App. 3d at 36.

As an initial matter, we note that Todd’s initial argument appears to be based on a faulty premise.  Todd repeatedly argues that the trial court determined "reformation [of the insurance contract] to be inappropriate" and that "it was not considering parol evidence."  Todd then constructs his argument as if this court is bound to give deference to the trial court’s determination on the issues of reformation and parol evidence.  We emphasize that our review is 
de
 
novo
 and, therefore, we give no deference to the trial court’s determination of those issues; rather, if necessary, we determine the relevance and applicability of those issues ourselves.

That said, we turn to Todd’s contention that the trial court erred in interpreting the workers' compensation policy as allowing General Casualty to exclude Todd from coverage in the absence of a written exclusion included with the written policy sent to Carroll Tiling.  Todd points to the provision of the policy that states:

"This policy includes at its effective date the Information Page and all endorsements and schedules listed there.  It is a contract of insurance between you (the employer named in Item 1 of the Information Page) [Carroll Tiling] and us (the insurer named on the Information Page) [General Casualty].  The only agreements relating to this insurance are stated in this policy.  The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy."

Todd interprets the above-quoted passage as limiting the agreement to that which is embodied in the written policy delivered to Carroll Tiling.  According to Todd, the fact that General Casualty did not include an exclusion endorsement listing Todd as excluded leads to the conclusion that Todd was covered by the workers' compensation insurance policy.  We disagree.

The construction of an insurance policy presents a question of law.  
State Farm Mutual Automobile Insurance Co. v. Villicana
, 181 Ill. 2d 436, 441 (1998).  When construing an insurance policy, the court is to ascertain and give effect to the intention of the parties as expressed in the agreement, according the terms used in the policy their plain and ordinary meanings.  
Villicana
, 181 Ill. 2d at 441.  The court is to apply those terms as written, reading the policy as a whole and considering the type of insurance, the nature of the risks involved, and the overall purpose of the contract.  
Villicana
, 181 Ill. 2d at 442.  Last, the provisions of the policy are to be construed liberally in favor of the insured and against the insurer.  
Villicana
, 181 Ill. 2d at 442.

While we are in agreement with Todd that the provision he cites limits the terms of the insurance contract to those contained in the policy, we do not agree that this provision ends our inquiry into the terms of the policy.  On the contrary, reading the policy as a whole, we note that the policy also provides that General Casualty: 

"may elect not to renew the policy. [General Casualty] will mail to each named insured and to the broker or agent of record not less than 60 days notice stating when the nonrenewal will take effect.  If [General Casualty does] not give 60 days but instead give[s] between 31 and 60 days, the policy will automatically be extended for 60 days.  If [General Casualty] fail[s] to give 31 days notice, 
the policy will automatically be extended for one year
."  (Emphasis added.)

General Casualty reads this provision to mean, and we agree, that, where the policy is automatically renewed, it continues in force with exactly the same provisions as were in effect for the preceding year.  

Therefore, in reviewing the language of the policy and the factual record, we note that in 1997 Todd agreed to allow Carroll Tiling to exclude him from coverage under its workers' compensation insurance policy.  The record further demonstrates that in each of the next two years, the policy automatically renewed, with all of the terms intact from the previous year.  The record is barren of any further discussions between General Casualty and Carroll Tiling regarding any changes to the policy, as would be expected from the automatic operation of the renewal provision.  We also note that the renewal information sheet of the policy indicates that endorsement WC000308, the officer exclusion, is a part of the policy.  Each renewal policy also included the same provisions as the preceding year’s policy.

The factual record also indicates that, following the exclusion of Todd from workers' compensation coverage, Carroll Tiling did not pay any workers' compensation premium to cover Todd’s salary.  This information, however, is outside the four corners of the contract.  Generally, extrinsic evidence regarding the terms of an unambiguous written agreement is inadmissible.  
O’Brien v. Cacciatore
, 227 Ill. App. 3d 836, 845 (1992).  Here, we find that the policy was ambiguous as a result of the merger clause and the automatic renewal provision.  Literally, the agreement consists only of whatever writings are delivered to the insured.  The issue here, however, is how the merger provision interacts with the automatic renewal provision where the writings delivered to the insured do not reflect the terms of the agreement for the previous year and the agreement has been automatically renewed.  Based on this ambiguity, the court could properly consider extrinsic evidence to resolve this issue.  Moreover, we read General Casualty’s argument as suggesting that Todd’s election to be excluded from coverage was fraudulent or that it made a mistake in assembling the physical policy to deliver to Carroll Tiling.  Extrinsic evidence, such as the premium payment information here, is admissible under an exception to the parol evidence rule where it is introduced to prove mistake or fraud.  
O’Brien
, 227 Ill. App. 3d at 845.  As a result, we may consider the extrinsic evidence offered by General Casualty to assist in resolving the ambiguity arising from the operation of the merger and automatic renewal provisions.

Thus, the policy between Carroll Tiling and General Casualty appears to exclude Todd from coverage under the policy.  Generally, and in the absence of any special circumstances, the effect of the exclusion would be to relieve General Casualty from paying workers' compensation insurance benefits on Todd’s behalf.

This exclusion, however, comes in the context of workers' compensation insurance and raises another question, namely, whether an employer can exclude an employee from workers' compensation insurance.  Turning to the Workers' Compensation Act (Act) (820 ILCS 305/1 
et seq.
 (West 2000)), we find that, under certain circumstances, an employee may be removed not only from insurance coverage but also from the protection of the Act altogether.  Section 3(17)(b) provides:

"The corporate officers of any domestic or foreign corporation employed by the corporation may elect to withdraw themselves as individuals from the operation of this Act.  Upon an election by the corporate officers to withdraw, written notice shall be provided to the insurance carrier of such election to withdraw, which election shall be effective upon receipt by the insurance carrier of such written notice.  A corporate officer who thereafter elects to resume coverage under the Act as an individual shall provide written notice of such election to the insurance carrier which election shall be effective upon receipt by the insurance carrier of such written notice.  For the purpose of this paragraph, a 'corporate officer’ is defined as a bona fide President, Vice President, Secretary or Treasurer of a corporation who voluntarily elects to withdraw."  820 ILCS 305/3(17)(b) (West 2000).

(The version of section 3(17)(b) of the Act in effect in 1997 at the time of Todd’s election to withdraw himself from insurance coverage contained language limiting its effect to small businesses.  The subsequent amendment of section 3(17)(b) does not affect our analysis, as there is no issue raised regarding whether Carroll Tiling’s officers were eligible to utilize section 3(17)(b) of the Act.)  Section 3(17)(b) of the Act allows a person who happens to be a 
bona fide
 president, vice president, secretary, or treasurer of a corporation to withdraw from the operation of the Act simply by notifying his insurer in writing.  In other words, by withdrawing from the protection of the Act, the person cannot file a claim for workers' compensation benefits should the person otherwise qualify for them.  

General Casualty has consistently asserted that Todd withdrew himself from the operation of the Act when, on September 15, 1997, he signed the form entitled "Illinois Workers Compensation Benefits Rejection Form."  Similarly, Todd has maintained that the form was ineffective to withdraw him from the operation of the Act.  Additionally, Todd argues that there is a genuine issue of material fact surrounding the issue of whether he was a 
bona
 
fide
 corporate officer as defined in section 3(17)(b) of the Act.  We will therefore examine the rejection form in detail.

As noted above, the form is entitled "Illinois Workers Compensation Benefits Rejection Form."  It further bears the legend, in large bold type, "
NOTICE TO BUSINESS OWNERS OR PARTNERS
," as well as the logo for the General Casualty Companies.  The form also contains one signature line for a sole proprietor and four signature lines for business partners.  Finally, the form states that Illinois workers' compensation law applies to the sole owner or business partner and that the business’s workers' compensation insurance automatically provides coverage.  The form continues, "If you do not want to be covered under this policy, you must specifically reject the coverage by signing this form."  Nowhere does the form indicate that the signer will be withdrawing from the operation of the Act and be foreclosed from claiming benefits under the Act; instead the signer appears to withdraw only from insurance coverage with no mention being made of rejecting all workers' compensation benefits under the Act.

We find Todd’s arguments to be the more persuasive here.  The form applies to insurance coverage only, with no mention of withdrawal from the operation of the Act or rejection of benefits under the Act.  Further, that the rejection form is directed to a sole proprietor or business partner is also problematic.  While there is a dispute as to Todd’s status as a corporate officer, there is no dispute that Todd was neither a partner in Carroll Tiling nor its sole proprietor.  

In addition to the issues arising from the face of the rejection form, the requirements of section 3(17)(b) of the Act are not satisfied by the language of the form.  Section 3(17)(b) states that the "corporate officers of any domestic or foreign corporation employed by the corporation may elect to withdraw themselves as individuals from the operation of this Act" (820 ILCS 305/3(17)(b) (West 2000)) by providing written notice to the insurer.  As the officers are withdrawing from the operation of the Act, section 3(17)(b) implies that the written notice should inform both the officers as well as the insurer that the withdrawal is from the Act and not only the insurance coverage.  We hold, therefore, that the rejection form was ambiguous concerning Todd because it purported to withdraw him from workers' compensation insurance coverage only and not from the operation of the Act and because it was not directed to him in any proper capacity.  Applying the principles of insurance contract construction to the ambiguous rejection form, we must construe the rejection form in Todd’s favor and against General Casualty.  See 
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479 (1997) (ambiguity to be construed against insurer); 
Ramirez v. State Farm Mutual Automobile Insurance Co.
, 331 Ill. App. 3d 77, 81 (2002) (same).  Thus, at best, Todd’s signature on the rejection form served to express his assent to being withdrawn from coverage under Carroll Tiling’s workers' compensation insurance policy.  The form did not withdraw Todd from the operation of the Act.

This conclusion raises a further question of whether an employer and its insurer are able to exclude an employee from insurance coverage under the Act.  Under the Act, in order to assure that it will be able to pay its workers' compensation benefits, an employer may self-insure its workers' compensation liability, post a bond or other security to cover its workers' compensation liability, insure its entire workers' compensation liability through the purchase of an insurance policy, or make some other arrangement to secure its liability that is approved by the Industrial Commission.  820 ILCS 305/4(a) (West 2000).  If the employer chooses to procure an insurance policy, such a policy constitutes the "[i]nsurance of the obligations accepted by or imposed upon employers under laws for workers' compensation."  215 ILCS 5/4(2)(d) (West 2000).  By choosing to purchase insurance, therefore, Carroll Tiling purchased it for all of its employees, including Todd.  As the rejection form was ineffective to withdraw Todd from the operation of the Act, it stands to reason that he was still under the protection of the Act at the time of his injury.

This leads naturally to the issue of the effect the form has upon General Casualty’s obligation to Carroll Tiling and its employees.  In other words, the issue becomes whether the withdrawal of Todd from insurance coverage was effective.

The Act provides that "[e]very policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured."  820 ILCS 305/4(a)(3) (West 2000).  This provision, when read with the requirement that insurance obtained for an employer's workers' compensation benefits liability must cover the entirety of its liability, leads to the conclusion that the Act prohibits the withdrawal of an individual employee from insurance coverage as well as prohibits an employer and its insurer from selectively omitting an employee from the coverage of a policy an insurer has issued to an employer.  This conclusion is borne out by the Act’s command, "[a]ny provision in any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void."  820 ILCS 305/4(a)(3) (West 2000).  As the rejection form was ineffective to withdraw Todd from the operation of the Act, and as the Act prohibits removing him from insurance coverage, we hold that the rejection form was also ineffective in removing him from coverage under the workers' compensation insurance policy issued by General Casualty.  This conclusion is borne out by the consideration that the Act prohibits General Casualty from issuing an insurance policy for fewer than all of Carroll Tiling’s employees who are not 
bona
 
fide
 corporate officers who have properly withdrawn from the operation of the Act pursuant to section 3(17)(b) of the Act.  As it purported to do so by the endorsement excluding Todd, the exclusion of Todd was void under section 4(a)(3) of the Act.  As a result, Todd continued to be covered by the General Casualty insurance policy at the time of his accident.

General Casualty contends that an employer is free to remove an employee from insurance coverage at any time it wishes.  According to General Casualty, the liability of the employer under the Act is not coextensive with that of the insurer.  As a result, the language of the policy is the sole determinant of the insurer’s liability.  In support of this position, General Casualty relies upon 
Brodek v. Indemnity Insurance Co. of North America
, 292 Ill. App. 363 (1937),  
Jennings v. Bituminous Casualty Corp.
, 47 Ill. App. 2d 243 (1964), and 
Ohio Casualty Insurance Co. v. Southwell
, 284 Ill. App. 3d 1019 (1996),
  While the cases generally support General Casualty’s contention that the court must look at the contract language to determine the insurer’s liability, both the cases and General Casualty’s argument have little bearing on the issue here, namely, what is the insurer’s liability where it has acquiesced, even inadvertently, to an employer’s apparent violation of the requirements of the Act by seeking to procure a workers' compensation insurance policy that does not provide coverage to a certain employee.

Brodek
 resolved a claim at law seeking to recover for an occupational disease.  The plaintiff did not bring a workers' compensation claim.  The insurance policy at issue covered only workers' compensation liability and specifically declined to cover any other liability.  
Brodek
, 292 Ill. App. at 274.  Because the claim brought in 
Brodek
 was clearly outside the coverage of the insurance policy, it is distinguishable from this case.

Jennings
 is distinguishable, but it also provides some small guidance.  There, the plaintiff was found not to be an employee of the employer and the insurer was not required to provide a defense to the employer, as the defendant was clearly outside the coverage of the insurance policy.  
Jennings
, 47 Ill. App. 2d at 249.  The plaintiff argued that the insurer was estopped to deny coverage because it had accepted premiums based in part on the plaintiff’s salary.  The court held that the acceptance of premiums was not a sufficient act or failure on the part of the insurance company to estop the insurer to point out that the plaintiff was not an employee of the employer.  
Jennings
, 47 Ill. App. 2d at 251.  Here, there is no question that Todd was an employee and would be otherwise covered by the insurance policy.  Further, 
Jennings
 can be read to support the position that the payment of the premium is not determinative of coverage and, conversely, the nonpayment of the premium is similarly not determinative of exclusion.

Southwell
 is also distinguishable.  There, the issue was whether to apply Illinois or California law to a claim that occurred in Illinois.  The plaintiff argued that Illinois law prohibited an insurer from limiting the territoriality of its insurance policy.  The court decided that California law, which had no such prohibition, applied and that the insurance policy did not apply.  
Southwell
, 284 Ill. App. 3d at 1023-24.  Here, there is no choice-of-law issue, and the issue is squarely one of the interpretation of the Illinois Act.  
Southwell
 provides no guidance.

We note that General Casualty does not directly confront the issue we deem to be dispositive, namely, the effect on the insurer’s liability of an attempt to exclude an employee from insurance coverage.  Instead, General Casualty asserts that the Act does not mandate any liability for an insurer, but only for  the employer.  We disagree.  The Act provides that an insurer may be made a party to an employee’s workers' compensation claim.  820 ILCS 305/4(g) (West 2000).  Additionally, it specifies that an insurance policy is to cover all of an employer’s employees.  820 ILCS 305/4(a)(3) (West 2000).  Thus, the reach of the Act "goes beyond even the employer, to the insurance carrier, in order to protect the injured worker."  
Employers Mutual Cos. v. Skilling
, 256 Ill. App. 3d 567, 573 (1994), 
rev’d in part on other grounds
, 163 Ill. 2d 284 (1994).

General Casualty argues that Todd was a 
bona
 
fide
 corporate officer pursuant to section 3(17)(b) of the Act and that the benefits rejection form operated to withdraw him from the operation of the Act.  Todd maintains that he was no more than a sham officer given the title of vice president with no real commensurate duties to correspond with his title.  As we have determined that the benefits rejection form was ineffective, both as written and because, as written, it violates the public policy embodied in the Act, we need not pass upon Todd’s status as a corporate officer.

Because we have found that Todd was still covered by the General Casualty insurance policy despite his signature on the benefits rejection form, we hold that the trial court erred by granting summary judgment in favor of General Casualty and denying summary judgment to Todd.  As a result of our determination, we need not address Todd’s remaining issues with respect to General Casualty’s motion for summary judgment.  We now turn to the trial court’s dismissal of Todd’s third-party claims against Clark and Law.

Todd argues that the trial court erred by dismissing his third-party complaint against Clark and Law on the basis that it was not timely.  In his third-party complaint, Todd alleged that Clark and Law breached their fiduciary duties to Carroll Tiling and to Todd by failing to inform Todd that he might be excluded from coverage after signing the exclusion election in 1997 and by failing to procure coverage for Todd thereafter.  (We note that Todd’s claims against Clark and Law are raised both individually and as assignee of Carroll Tiling.)  Clark and Law filed a motion to dismiss pursuant to section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2000)).  We review 
de
 
novo
 the grant of a section 2--619 motion to dismiss
.  
Indiana Insurance Co. v. Machon & Machon, Inc.
, 324 Ill. App. 3d 300, 302 (2001).

Clark and Law argue that, under section 13--214.4 of the Code  (735 ILCS 5/13--214.4 (West 2000)), Todd’s third-party complaint was not filed within two years of accrual.  Todd argues that his causes of action against Clark and Law accrued upon his injury but that the discovery rule tolled the two-year statute of limitations until General Casualty’s denial of workers' compensation coverage to Todd.  The issues we are to decide, therefore, are the date at which Todd’s causes of action against Clark and Law accrued and whether the discovery rule should be employed to toll the statute of limitations, keeping in mind whether the claim is Todd’s individually or the claim is Carroll Tiling’s assigned to Todd.

Section 13--214.4 provides:

"Actions against insurance producers, limited insurance representatives, and registered firms.  All causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues."  735 ILCS 5/13--214.4 (West 2000).  

Section 13--214.4 thus requires that "
all
 causes of action brought by 
any
 person or entity under 
any
 theory against an insurance producer shall be brought within two years of the date the cause of action accrues."  (Emphasis in original.)  
Machon
, 324 Ill. App. 3d at 303.

Generally, accrual of a cause of action in tort has been treated differently from accrual of a cause of action in contract.  
Machon
, 324 Ill. App. 3d at 303.  Most causes of action in tort accrue when the plaintiff suffers injury; causes of action in contract and causes of action in tort arising out of a contractual relationship accrue at the time of the breach of the contract.  
Machon
, 324 Ill. App. 3d at 303.  This distinction serves to prevent the plaintiff from waiting after a breach of contract in order to increase his damages.  
Machon
, 324 Ill. App. 3d at 303.

We consider first Todd’s individual claim against Clark and Law.  Here, Todd claims that Clark and Law breached their fiduciary duties to Todd.  Todd alleges that Clark and Law both breached their fiduciary duties when they failed to inform Todd about the effects of signing the exclusion election (this breach occurred in 1997) and failed to provide workers' compensation coverage to Todd after the 1997 exclusion from coverage ended.  Because the policy automatically renewed with the same terms as the preceding year, Clark and Law would have had to procure such coverage beginning on April 1, 1998.  Thus, the breach of their duties allegedly occurred on April 1, 1998, the renewal date of the policy, requiring Todd’s third-party complaint against Clark and Law to have been filed by April 1, 2000.  As the third-party complaint was not filed until May 2001, it is untimely under section 13--214.4.  In addition, Clark and Law failed to procure coverage for Todd at the beginning of the next renewal period, April 1, 1999.  By a similar analysis, this claim is still untimely, because the limitations period expired on April 1, 2001, and Todd’s claim was not filed until May, 2001, after the limitations period expired.

Todd argues that his claims against Clark and Law are not time-barred because he did not discover them until General Casualty denied his workers' compensation claim.  Todd argues that this was the earliest date at which he could have discovered his individual claim against Clark and Law because the policy delivered to Carroll Tiling was consistent with Todd’s understanding that he was not excluded from coverage.  (It should be remembered that the written policies delivered to Carroll Tiling did not list Todd as being excluded from workers' compensation coverage; only Craig was listed as excluded.)  We agree that the discovery rule operates to toll the limitations period in this case.

In 
Broadnax v. Morrow
, 326 Ill. App. 3d 1074 (2002), the court employed the discovery rule in regard to a plaintiff’s claim against his insurance agent.  There, the plaintiff had procured fire insurance and filed a claim after his building was damaged in a fire.  The insurance company denied coverage because the plaintiff had not complied with a vacancy provision of the policy and, on May 10, 1996, filed a declaratory judgment action seeking a declaration of no coverage. 
 On September 1, 1999, the plaintiff filed a negligence action against the insurance agent for obtaining a policy that did not allow the plaintiff to leave his building vacant.  
Broadnax
, 326 Ill. App. 3d at 1076-77.  The court, determining that the relationship between the plaintiff and the insurance agent was fiduciary, held that the discovery rule applied.  
Broadnax
, 326 Ill. App. 3d at 1079.  The court concluded that the limitations period commenced on May 10, 1996, the date on which the insurer filed the declaratory judgment action, because on that date, the plaintiff knew or reasonably should have known that the policy procured by the insurance agent contained a vacancy provision with which the plaintiff had not complied.  
Broadnax
, 326 Ill. App. 3d at 1081.

We find 
Broadnax
 to be directly on point.  Here, Todd alleges that Clark and Law had a fiduciary obligation to make sure that he was covered by workers' compensation insurance.  He alleges that the written policies delivered to Carroll Tiling did not indicate that he was excluded from coverage.  Todd also alleges that it was only on February 8, 2000, when General Casualty filed its declaratory judgment action, that Todd knew or reasonably should have known that Clark and Law had not procured for him workers' compensation insurance coverage.  Accepting these allegations as true, as we must when reviewing a motion to dismiss, we hold that, on February 8, 2000, the tolling of the statute of limitations ceased and Todd’s two-year period for filing this action commenced.  Because Todd’s individual claims against Clark and Law were filed on May 9, 2001, the third-party complaint was filed within the two-year period pursuant to section 13--214.4 of the Code.  The trial court erred by dismissing Todd’s individual third-party claims against Clark and Law.

Clark and Law attempt to distinguish 
Broadnax
.  Clark and Law argue that 
Broadnax
 retains the date of breach as the date of accrual of the cause of action.  That may be true, but they ignore the fact that 
Broadax
 employed the discovery rule to toll the statute of limitations.  Thus, 
Broadnax
 stands for the proposition that, when an insurance agent owes a fiduciary duty to an insured, a cause of action for breach of that duty accrues at the time of the breach, but the statute of limitations is subject to tolling by application of the discovery rule.  In other words, the insured’s cause of action would not be premature if filed before incurring damages.  Nevertheless, under the facts of 
Broadnax
 and under the facts alleged in Todd’s third-party complaint, the statute of limitations also is tolled until discovery of the breach, which here and in 
Broadnax
 occurred as of the filing of the declaratory judgment action by the insurer.

Clark and Law do not address the effect of employing the discovery rule to toll the running of the statute of limitations, instead focusing only upon the date of breach of their alleged fiduciary duty to Todd.  We find that 
Broadnax
 properly controls our determination of whether Todd’s individual third-party claims were timely filed.

We now consider Todd’s assigned claims.  Todd makes essentially the same material allegations as in his individual claims.  We find the assigned claims to be materially different from the individual claims for the purposes of our statute of limitations analysis.  Craig testified in his deposition that he knew that Todd had elected to withdraw himself from the operation of the Act.  He testified that he knew Todd had not elected to resume coverage under the Act and had never made that request of General Casualty.  At the time of the renewal of the workers' compensation insurance policy, Craig testified that Todd was not and would not be covered by the insurance.  Thus, here, Carroll Tiling had actual knowledge that Todd would not be covered.  (We note that, in light of our determination that Todd’s withdrawal was ineffective and that General Casualty’s insurance policy still provided coverage for Todd, it would appear that his third-party claims are moot.  That issue, however, is not before us.  We are asked to review only whether the trial court properly granted Clark and Law’s motion to dismiss on the basis that the claims were time-barred and make no statement as to the ultimate merits and viability of Todd’s third-party claims.)  Because it had actual knowledge of Todd’s exclusion from coverage under the workers' compensation insurance policy, Carroll Tiling cannot invoke the discovery rule to toll the running of the statute of limitations.  

Clark and Law argue that 
Broadnax
 reaffirmed the date of breach as the date of accrual of a cause of action arising out of a tort (breach of fiduciary duty) based on a contractual relationship.  We agree.  Thus, we hold that Carroll Tiling’s claims against Clark and Law accrued as of the date of the breach, namely, the date of renewal when Clark and Law allegedly failed to procure coverage for Todd.  The workers' compensation insurance policy automatically renewed on April 1, 1998, and April 1, 1999.  Thus, the latest date Carroll Tiling’s claims could have been filed was April 1, 2001.  Todd filed his assigned claim against Clark and Law on May 14, 2001, which was after the statute of limitations had expired.  (We note that Todd also alleges, in the assigned claim, that Clark and Law failed to advise Carroll Tiling of the effect of electing to be excluded from the operation of the Act.  This breach occurred on September 15, 1997, and, because Carroll Tiling had actual notice of Todd’s election, that is another accrual date for the claim against Clark and Law.  The statute of limitations for the claim based on Clark's and Law’s alleged failure to advise therefore expired on September 15, 1999.)  We hold, therefore, that the trial court properly dismissed Todd’s assigned third-party claims against Clark and Law.

For the foregoing reasons, we reverse the judgment of the circuit court of Carroll County granting General Casualty’s motion for summary judgment and denying Todd’s cross-motion for summary judgment.  We reverse the trial court’s dismissal as untimely of Todd’s individual third-party complaint but affirm the dismissal of Todd’s assigned third-party complaint based on Carroll Tiling’s rights against Clark and Law.  We remand this cause to the circuit court of Carroll County for the entry of an order denying General Casualty’s motion for summary judgment and granting Todd’s cross-motion for summary judgment and for further proceedings consistent with this order.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and GILLERAN JOHNSON, JJ., concur.

SUPPLEMENTAL OPINION ON REHEARING

JUSTICE O’MALLEY delivered the opinion of the court:

General Casualty filed a petition for rehearing alleging that this court overlooked and misapprehended certain points.  We allowed General Casualty’s petition for rehearing.  We note that, generally, General Casualty seeks simply to reargue the points we decided against it on appeal.  Therefore, we will not further consider those points.  General Casualty does, however, develop an argument on rehearing that is not repetitive and that alleges that we failed to properly apply the holding of 
D. Mayer Landscaping, Inc. v. Industrial Comm’n
, 328 Ill. App. 3d 853 (2002), to the facts of this case.  Accordingly, we will address General Casualty’s contentions on this point.

In 
D. Mayer
, the decedent was the president of a landscaping business.  In 1995, he was killed when his lawnmower tipped over and crushed him while he was mowing on a hill.  His wife, the claimant, sought workers’ compensation benefits, but her claim was denied because the decedent was an excluded corporate officer under section 3(17)(b) of the Act (820 ILCS 305/3(17)(b) (West 2000)).  
D. Mayer
, 328 Ill. App. 3d at 855.

The appellate court noted that the circuit court’s initial judicial review invoked the dual capacity doctrine to find that the decedent was covered by the Act as an employee even if the decedent had elected to withdraw from the Act as an officer.  
D. Mayer
, 328 Ill. App. 3d at 856.  The court disposed of this contention by noting that section 3(17)(b) of the Act allowed the officers to " 'withdraw themselves as individuals from the operation' " of the Act.  
D. Mayer
, 328 Ill. App. 3d at 858, quoting 820 ILCS 305/3(17)(b) (West 1998).  According to the court, this meant that the officer withdrew himself in all capacities, officer or employee, such that there would be no coverage under the Act regardless of the nature of the work being performed at the time of the injury.  
D. Mayer
, 328 Ill. App. 3d at 858.

Next, the court found that the claimant had waived consideration of her argument that the written notice was ineffective to withdraw the decedent from the operation of the Act.  
D. Mayer
, 328 Ill. App. 3d at 859.  Last, the court held that, as a result of the decedent’s decision to withdraw himself from the operation of the Act, the claimant did not have an independent right to recover benefits under the Act.  
D. Mayer
, 328 Ill. App. 3d at 859-60.  In determining that the claimant had no claim for benefits as a survivor because there was no statutory basis for such a survivor’s claim
, the court stated that, "pursuant to the language in section 3(17)(b) of the Act, if an officer elects to not be covered by a workers’ compensation policy, the Act does not apply at all."  
D. Mayer
, 328 Ill. App. 3d at 860.

General Casualty argues that 
D. Mayer
 controls the outcome of the instant case.  General Casualty argues that the court’s holding that, "if an officer elects to not be covered by a workers’ compensation policy, the Act does not apply at all," is dispositive of Todd’s arguments on appeal.  We agree that the quoted phrase would be dispositive, but only if we ignored what 
D. Mayer
 was called upon to decide.  Looking at what was decided in 
D. Mayer
 demonstrates that the issue we are called upon to decide here was neither presented nor decided in 
D. Mayer
.  Further, in focusing on the purportedly dispositive phrase, General Casualty ignores the court’s pronouncement that "[t]he insurance policy cannot form a basis for exclusion unless the Act so authorizes.  As a result, the statutory exclusion controls the nature of the exclusion under the insurance policy."  
D. Mayer
, 328 Ill. App. 3d at 858-59.  This passage undercuts General Casualty’s argument and demonstrates that the language of the Act requires that an officer withdraw himself from the operation of the Act.  Thus, our holding is consistent both with the Act and with 
D. Mayer
.

In 
D. Mayer
, the court decided whether the survivor-claimant had an independent basis for recovery under the Act and whether the dual capacity doctrine allowed the survivor-claimant to recover on the decedent’s behalf.  Significantly, the court expressly refused to consider the claimant’s arguments on the sufficiency of the written notice, holding that they were waived.  
D. Mayer
, 358 Ill. App. 3d at 859.  Here, the sufficiency of notice comprises the primary issue in this case.  As 
D. Mayer
 expressed no judgment on that issue, it cannot be considered to be controlling here.

In addition, we note that General Casualty misapprehends the basis of our decision.  The Act provides:

"The corporate officers of any domestic or foreign corporation employed by the corporation may elect to withdraw themselves as individuals from the operation of this Act.  Upon an election by the corporate officers to withdraw, written notice shall be provided to the insurance carrier of such election to withdraw, which election shall be effective upon receipt by the insurance carrier of such written notice."  820 ILCS 305/3(17)(b) (West 2000).  

Here the written notice did not provide that Todd was withdrawing from the operation of the Act.  Thus, it was not effective to withdraw Todd from the operation of the Act.

Further, the fact that General Casualty created the form and it became a part of the insurance contract compounds the problem for General Casualty, because even if the form were ambiguous, we would construe it against General Casualty.  Thus, in our view, the fact that the words used on the form served only to withdraw Todd from insurance coverage and not from the operation of the Act controls the outcome.  This central premise of our holding remains unaddressed by General Casualty in its petition for rehearing and does not conflict with 
D. Mayer
, where there was no issue about the efficacy and sufficiency of the decedent’s notice to withdraw from the operation of the Act.  As a result, we issue this supplemental opinion on rehearing which clarifies our decision, but our original holding remains unchanged.

For all of the foregoing reasons, the judgment of the circuit court of Carroll County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with both this opinion and supplemental opinion.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and GILLERAN JOHNSON, JJ., concur.