FIFTH DIVISION

No. 1-07-2663

| | | |
|---|---|---|
| VIRGINIA SURETY COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 06 CH 2165 |
| | ) | |
| ADJUSTABLE FORMS INC., ILLINOIS INSURANCE | ) | Honorable |
| GUARANTY FUND, MORSE DIESEL INC., AMEC | ) | Nancy J. Arnold, |
| CONSTRUCTION COMPANY, formerly known as Morse | ) | Judge Presiding. |
| Diesel International, Inc., AMEC, INC., MCL | ) | |
| COMPANIES OF CHICAGO, INC., MCL | ) | |
| CONSTRUCTION COMPANIES, MCL VENTURES, | ) | |
| INC., MCL EQUITIES CORPORATION, MCL | ) | |
| CORPORATION, MCL MANAGEMENT | ) | |
| CORPORATION, RIVER EAST, L.L.C., RIVER EAST | ) | |
| INC., LEAM STEEL ERECTORS INC., LIEBHERR- | ) | |
| WERK BIBERACH GmbH, and MORROW | ) | |
| EQUIPMENT COMPANY, L.L.C., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Illinois Insurance Guaranty Fund, | ) | |
| | ) | |
| Defendant-Appellant). | ) | |

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant Illinois Insurance Guaranty Fund (IIGF) appeals the trial court's granting of

summary judgment in favor of Virginia Surety Company, Inc. (Virginia Surety). On appeal, the

IIGF contends that the trial court erred in granting summary judgment because the Virginia

Surety insurance policy provided workers' compensation coverage for the injury an employee

suffered while working on a construction site. The IIGF also contends on appeal that the

Virginia Surety insurance policy qualified as "other insurance" pursuant to section 546(a) of the

Illinois Insurance Code (215 ILCS 5/546(a) (West 2004)) that must be exhausted before the IIGF must pay for coverage provided under an insurance policy issued by the now insolvent Reliance Insurance Company (Reliance). For the reasons stated below, we affirm.

On November 9, 2000, Michael Hadrys was injured at a large construction site known as the River East project while working on a tower crane that allegedly malfunctioned. At the time of Hadrys' injury, he was employed by Adjustable Forms, Inc. (Adjustable Forms), and was performing work on behalf of and in the scope of his duties for Adjustable Forms.

Reliance issued a "wrap-up" or an owner-controlled insurance program (OCIP) policy providing workers' compensation and employer's liability insurance for the River East project and its subcontractors, which included Adjustable Forms. Since Adjustable Forms was included in the OCIP, it reduced its construction work bid by $526,793, which was an amount representing what Adjustable Forms would have paid for insurance coverage absent inclusion in the OCIP. Adjustable Forms also warranted that it omitted from its bid the cost of coverage provided under the OCIP and that it had the "responsibility to notify [its] own insurance carrier to exclude from [its] regular insurance policies all Work to be done under this Contract."

Hadrys filed a complaint on February 1, 2001, to recover for his injury against the project's property owners, the general contractors and others. The defendant property owners included: MCL Construction Corporation; MCL Ventures, Inc.; MCL Equities Corporation; MCL Management Corporation; River East, L.L.C.; and River East, Inc. The defendant general contractors included: Morse Diesel International, Inc.; Morse Diesel; and/or AMEC, Inc. The other defendants included: Morrow Equipment Co., L.L.C.; Liebherr-Werk Biberach GmbH; and Leam Steel Erectors, Inc. Hadrys filed a second amended complaint on October 28, 2004.

Defendant Liebherr-Werk Biberach GmbH filed a third-party contribution action asserting contributory negligence against Adjustable Forms.

Reliance became insolvent and was placed in liquidation on October 3, 2001. In response to Reliance's insolvency, the IIGF stepped into Reliance's shoes and defended Adjustable Forms against the third-party complaint in the underlying proceedings. The IIGF also paid workers' compensation benefits to Hadrys relating to his injury. The IIGF then proceeded to seek reimbursement from Virginia Surety for the benefits paid and defense costs incurred in defending the action against Adjustable Forms. Alternatively, the IIGF asserted it would seek reimbursement for the claims paid to Hadrys from Adjustable Forms.

Adjustable Forms sent a letter to the IIGF dated January 9, 2006, stating that Adjustable Forms was entitled to full insurance coverage by the IIGF due to Reliance's liquidation. The letter also reiterated that Adjustable Forms excluded from its bid an amount representing an insurance premium payment for coverage at the River East project. The letter stated that Adjustable Forms "credited the general contractor and owner $526,793 in Adjustable Forms' price for work on the River East Project for the savings in not having to pay workers compensation premiums to Virginia Surety for the River East payroll."

Adjustable Forms paid an estimated annual premium in the amount of $175,775 to Virginia Surety for workers' compensation and employer's liability insurance in Illinois and Indiana for the period of November 28, 1999, to November 28, 2000, under policy number 0200102890. The estimated premium relating to Illinois work sites totaled $146,308 and totaled $29,247 for Indiana work sites. According to the policy, the final premium amount would be determined after the policy ended and was subject to an audit. After the audit, the final premium

that Adjustable Forms paid did not include the payroll for the River East project and Virginia Surety refunded to Adjustable Forms $144,743 of the $146,308 estimated Illinois work sites premium.

Virginia Surety's first notice of Hadrys' injury was through a letter sent to it by Adjustable Forms on September 12, 2005, which was approximately more than 2½ years after Adjustable Forms was served in the underlying lawsuit and approximately 5 years after Hadrys' injury.

On February 1, 2006, Virginia Surety filed a five-count complaint for declaratory judgment seeking a determination that it did not owe coverage to Adjustable Forms relating to Hadrys' injury at the River East project. Virginia Surety alleged that the final premium Adjustable Forms paid did not include the payroll for the River East project and that the Reliance policy provided coverage for the River East project. Virginia Surety asserted that Adjustable Forms selected Reliance and not Virginia Surety to pay workers' compensation coverage to Hardrys and to defend the underlying action. Virginia Surety also asserted that Adjustable Forms breached the policy's terms because Adjustable Forms failed to notify Virginia Surety immediately of the injury and to promptly forward the litigation documents. In the remaining counts, Virginia Surety asserted waiver and estoppel defenses. Adjustable Forms filed an answer requesting a declaration that the IIGF assumed Reliance's obligations to provide a defense and indemnity in the underlying proceedings or, in the alternative, that Virginia Surety owed Adjustable Forms a defense and indemnity in the underlying proceedings.

Virginia Surety filed a motion for summary judgment on April 18, 2007, asserting that the uncontested facts demonstrate that Virginia Surety did not provide workers' compensation

coverage to Adjustable Forms relating to the River East project. The IIGF responded that the Virginia Surety policy was "other insurance" pursuant to section 546(a) of the Illinois Insurance Code and must be first exhausted before the IIGF provides coverage under Reliance's policy. Adjustable Forms responded that it did not pay premiums to Virginia Surety for the River East project because of its inclusion in the OCIP and that it could not have foreseen that the Hadrys lawsuit would have potentially involved the Virginia Surety policy. Adjustable Forms also asserted that its notice to Virginia Surety was reasonable given the IIGF's continued defense of the underlying lawsuit and payment of Hadrys' workers' compensation claim.

On July 20, 2007, the trial court granted summary judgment in Virginia Surety's favor finding that Reliance provided the only workers' compensation coverage for the River East project. The trial court modified its judgment in response to the IIGF's motion for reconsideration, but still granted summary judgment in Virginia Surety's favor. The trial court held that the Virginia Surety policy did not provide coverage to Adjustable Forms for the River East project and that the IIGF was not entitled to reimbursement from Virginia Surety for the indemnity and defense on Adjustable Forms' behalf or for the workers' compensation payments to Hadrys. The IIGF timely appealed the trial court's grant of summary judgment.

A trial court grants summary judgment where "the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Moorehead v. Mustang Construction Co.*, 354 Ill. App. 3d 456, 459, 821 N.E.2d 358, 360 (2004). Our responsibility in reviewing a trial court's granting of summary judgment "is limited to determining whether the trial court correctly found that no genuine issue of material fact existed." *General Casualty Co. of Illinois v. Carroll Tiling*

1-07-2663

*Service, Inc.*, 342 Ill. App. 3d 883, 889, 796 N.E.2d 702, 707 (2003). We review summary judgment rulings *de novo*. *Gaston v. Founders Insurance Co.*, 365 Ill. App. 3d 303, 314, 847 N.E.2d 523, 533 (2006).

Before addressing the merits of the IIGF's claims on appeal, we deem it beneficial to provide background information about OCIPs. "Under an OCIP, the owner of a large construction project purchases and provides for consolidated 'on-site' public liability and workers' compensation insurance coverage during the construction period. The owner is the 'insured' and policy coverage is extended to all who work 'on-site' under a contract with the owner." *Independent Insurance Agents of Oklahoma, Inc. v. Oklahoma Turnpike Authority*, 876 P.2d 675, 676 (Okla. 1994). The purpose underlying an OCIP is to "make the insurance programs used primarily for construction projects more equitable, uniform and efficient. OCIPs eliminate the costs of overlapping coverage and delays caused by coverage or other disputes between the parties involved in a project and, at the same time, protect all the contracting parties by bringing the risk of loss from the project within the insurance coverage of the OCIP." *Pride v. Liberty Mutual Insurance Co.*, No. 04-C-703, slip op. at 2 (E.D. Wis. June 5, 2007), citing J. Loveless, "Construction Insurance: Do You Only Get What You Pay For?" 78 N.Y. St. B.A.J. 10 (March-April 2006). With an OCIP, "the owner buys a policy of insurance that will cover all of the subcontractors. By absorbing the cost of insurance itself, the owner averts the need for each subcontractor to include the costs of insurance in its bid." *Pride*, slip op. at 2. By using an OCIP, "the contract price is reduced because insurance costs are not incurred by the contractors on the project." *Pride*, slip op. at 2. With this understanding of OCIPs in mind, we will now address the merits of the IIGF's contentions.

The IIGF first contends on appeal that the trial court erred in finding that the Virginia Surety workers' compensation policy did not provide coverage to Adjustable Forms for Hadrys' injury. The IIGF maintains that the Virginia Surety policy unambiguously covered the River East project, which was the site of Hadrys' injury. The IIGF claims that Virginia Surety failed to cite to exclusionary language in its policy that excludes coverage at the River East project, which was its obligation to do to disclaim coverage. Thus, the IIGF contends that the trial court erred in finding that the Virginia Surety policy did not provide coverage for Hadrys' injury.

We reject the IIGF's contention on appeal. Adjustable Forms included a credit of $526,793 in its bid for work on the construction project because of its inclusion in the OCIP. The credit was in lieu of Adjustable Forms separately paying a premium for workers' compensation and employer's liability insurance. In return for the credit in the construction bid, Adjustable Forms was covered under the OCIP policy issued by Reliance. According to the OCIP policy, Adjustable Forms certified that it omitted the cost of workers' compensation coverage from its bid and that it was responsible for notifying its insurance carrier to exclude from its regular insurance policy all work covered by the construction contract.

We acknowledge that the Virginia Surety's policy information page states that "Part One of the policy applies to the Workers Compensation Law of the states listed here: IL IN." The policy's information page also indicated that the workers' compensation premium was subject to verification and change by audit. Also, the locations section in the general section of the policy states: "This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states [sic] unless you have other insurance or are self-insured for such workplaces." The crux of the issue on appeal requires an identification that

Virginia Surety underwrote a workers' compensation policy for Adjustable Forms for the coverage period of November 28, 1999, to November 28, 2000; however, during the same policy period, Adjustable Forms participated in and was covered by the OCIP at the River East project. In return for the coverage under the OCIP, Adjustable Forms reduced its bid by an amount representing the cost for similar insurance coverage assuming Adjustable Forms was not covered under the OCIP. Here, the record reveals that Adjustable Forms was covered under the OCIP policy, Adjustable Forms warranted that it would contact its insurance company regarding its coverage under the OCIP, and Virginia Surety, after conducting an audit, returned the premium Adjustable Forms paid relating to the Illinois work sites to Adjustable Forms in early 2001. Virginia Surety returned the premium because Adjustable Forms' actual Illinois payroll after excluding the payroll for work performed on the OCIP project was less than the estimated Illinois payroll during the policy period. Considering these facts collectively, we conclude that the trial court did not err in granting summary judgment in Virginia Surety's favor on the basis that Virginia Surety did not provide workers' compensation coverage to Adjustable Forms.

Moreover, although Virginia Surety fails to cite to a specific exclusion listed in the exclusion section in part two of the policy, this court is not prohibited from concluding that Virginia Surety did not provide workers' compensation coverage for the River East project. When reviewing an insurance policy to determine the coverage provided under the policy, we must interpret the policy and the words used according their plain, ordinary, and popular meaning. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371, 875 N.E.2d 1082, 1091 (2007). The language used in the locations provision in the general section of the policy states in part that the policy covers all listed workplaces "unless you have other insurance or are self-

insured for such workplaces." The term "unless" is commonly defined as: "If it be not that; if it be not the case that; if not; supposing not; if it be not; except." Black's Law Dictionary 1536 (6th ed. 1990). The term "other" is commonly defined as meaning "[d]ifferent or distinct from that already mentioned; additional, or further." Black's Law Dictionary 1101 (6th ed. 1990). A common definition of the term "insurance" is "[a] contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils." Black's Law Dictionary 802 (6th ed. 1990). Interpreting the location provision in the Virginia Surety policy's general section using the plain, ordinary meaning of the words "unless," "other" and "insurance" provides an understanding that coverage does not exist if the insured has different or additional insurance. Again, since Adjustable Forms was covered under the OCIP policy and Virginia Surety did not retain any estimated premiums paid by Adjustable Forms relating to Illinois work sites, we do not agree with the IIGF that a genuine issue of material fact exists that the Virginia Surety policy did not provide coverage relating to Hadrys' injury.

The next step in the analysis, however, is to address the IIGF's other contention on appeal that the trial court erred in finding that the Virginia Surety workers' compensation policy does not qualify as "other insurance" that must be exhausted before turning to the IIGF for coverage. We consider it necessary here to provide a general background understanding of the IIGF. The Illinois Insurance Code established the IIGF "to protect policyholders of insolvent insurers and third parties who make claims under policies issued by insurers that become insolvent." *Roth v. Illinois Insurance Guaranty Fund*, 366 Ill. App. 3d 787, 794, 852 N.E.2d 289, 295 (2006). In Illinois, all insurers conducting business in the state must contribute to the

9

IIGF in direct proportion to the company's premium income. *Roth*, 366 Ill. App. 3d at 794, 852 N.E.2d at 295. Also, since all insurers must contribute to the IIGF, all claims brought against the IIGF's assets must be first reduced by claims brought against a solvent insurer. *Roth*, 366 Ill. App. 3d at 794, 852 N.E.2d at 295. Other insurance must first be exhausted when a "claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund." 215 ILCS 5/546(a) (West 2004).

At issue here is whether the IIGF correctly claims that Virginia Surety was "other insurance" under section 546(a) of the Illinois Insurance Code because Hadrys' injury "arises from the same facts, injury or loss that gave rise to the covered claim," which then required the Virginia Surety policy to be exhausted before the IIGF provides coverage. See 215 ILCS 5/546(a) (West 2004). The IIGF contends that the common facts at issue here are Hadrys' injury on November 9, 2000, when working for Adjustable Forms on the River East project. Since a common set of facts exists relating to Hadrys' injury, the IIGF contends that the trial court erred in granting summary judgment in Virginia Surety's favor because the Virginia Surety policy was "other insurance."

We disagree with the IIGF's contentions. The IIGF relies on this court's decisions in *Illinois Insurance Guaranty Fund v. Farmland Mutual Insurance Co.,* 274 Ill. App. 3d 671, 653 N.E.2d 856 (1995), and *Harrell v. Reliable Insurance Co.,* 258 Ill. App. 3d 728, 631 N.E.2d 296 (1994), to support its position that an "other insurance" provision in a policy does not include coverage provided by the IIGF.

In *Farmland Mutual Insurance Co.*, this court determined whether the IIGF should be considered "any other collectible insurance" after a primary insurer became insolvent. *Farmland*

*Mutual Insurance Co.,* 274 Ill. App. 3d at 673, 653 N.E.2d at 857. This court rejected the claim that if a solvent insurer's coverage is "excess" in relation to the insolvent insurer's coverage, then the solvent insurer stands in the same relationship with the IIGF as it did with the insolvent insurer. See *Farmland Mutual Insurance Co.,* 274 Ill. App. 3d at 673-74, 653 N.E.2d at 857-58. This court concluded that the IIGF "is not a source of 'collectible insurance' under Illinois statutory and case law." *Farmland Mutual Insurance Co.,* 274 Ill. App. 3d at 675, 653 N.E.2d at 858.

The issue this court analyzed in *Harrell* focused on determining the proper allocation of "responsibility among collateral insurers of the same risk when one of the insurers becomes insolvent and its obligations are taken up by the Fund." *Harrell,* 258 Ill. App. 3d at 730, 631 N.E.2d at 298. The *Harrell* court concluded that it was incumbent upon the solvent collateral insurers to provide the full amount of coverage stated in the policy before turning to the IIGF for coverage. *Harrell,* 258 Ill. App. 3d at 731, 631 N.E.2d at 298.

Although we agree with the general propositions advanced by the IIGF from its reliance on the *Farmland Mutual Insurance Co.* and *Harrell* cases, which recognized that "potential claims against the Fund's assets should be reduced by a solvent insurer, rather than the Fund," we consider the IIGF's reliance on these cases misplaced. *Harrell,* 258 Ill. App. 3d at 731, 631 N.E.2d at 298. In our opinion, *Farmland Mutual Insurance Co.* and *Harrell* are distinguishable from the instant case because a solvent *insurer* does not exist here.

The parties agree that Reliance was the insurer under the OCIP and that Reliance is now insolvent. Where the parties disagree is whether Virginia Surety was an insurer for injury claims occurring at the River East project. We note that the instant case is not one that involves the

determination of whether primary insurance should be exhausted before secondary insurance is to provide coverage or one involving excess insurance coverage. Rather, the analysis of the issue on appeal turns on the recognition and acceptance of the fact that Virginia Surety did not collect and retain a premium from Adjustable Forms for workers' compensation coverage at Illinois work sites. After conducting an audit according to the policy's terms, Virginia Surety returned the estimated premium Adjustable Forms paid since the payroll at the River East project was included in another insurance policy. Virginia Surety also returned the estimated premium before receiving notice of Hadrys' injury. We are mindful that the legislature in creating the IIGF wanted to prevent depletion of the fund's assets " 'to reimburse solvent insurance companies for payments made to claimants or their insured under policies for which they received a premium.' " *Farmland Mutual Insurance Co.*, 274 Ill. App. 3d at 675, 653 N.E.2d at 858, quoting *Pierre v. Davis*, 165 Ill. App. 3d 759, 761 (1987). We believe our conclusion that the Virginia Surety policy did not provide coverage for Hadrys' injury does not violate the public policy surrounding the IIGF's creation since the income relating to premium payments for coverage at the River East project was not included in Virginia Surety's income. Thus, we agree with the trial court that no genuine issue of material fact exists here relating to the lack of coverage under the Virginia Surety policy.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.

1-07-2663

_____

VIRGINIA SURETY COMPANY,

      Plaintiff-Appellee,

    v.

    ADJUSTABLE FORMS INC., ILLINOIS INSURANCE GUARANTY FUND, MORSE DIESEL INC., AMEC CONSTRUCTION COMPANY, formerly known as Morse Diesel International, Inc., AMEC, INC., MCL COMPANIES OF CHICAGO, INC., MCL CONSTRUCTION COMPANIES, MCL VENTURES, INC., MCL EQUITIES CORPORATION, MCL CORPORATION, MCL MANAGEMENT CORPORATION, RIVER EAST, L.L.C., RIVER EAST INC., LEAM STEEL ERECTORS INC., LIEBHERR-WERK BIBERACH GmbH, and MORROW EQUIPMENT COMPANY, L.L.C.,

    Defendants

(Illinois Insurance Guaranty Fund,

    Defendant-Appellant).

_____

No. 1-07-2663

Appellate Court of Illinois
First District, Fifth Division

May 16, 2008

_____

JUSTICE GALLAGHER delivered the opinion of the court.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.

_____

Appeal from the Circuit Court of Cook County.

Honorable Nancy J. Arnold, Judge Presiding.

_____

For APPELLANT, Stone & Moore, Chartered, Chicago, IL (J. Murray Pinkston, III, of counsel)

1-07-2663

For APPELLEE, SmithAmundsen LLC, Chicago, IL (Richard T. Valentino and Michael Resis, of counsel)