2017 IL App (1st) 161856

No. 1-16-1856

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT, FIRST DIVISION

| | | |
|---|---|---|
| ROGER KNOUSE, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| REJAT MOHAMEDNUR, SANTORINI FIVE | ) | |
| CAB CORP., and GLOBE TAXI ASSOCIATION, | ) | No. 12 L 13388 |
| INC., | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |
| (Rejat Mohamednur, | ) | Honorable |
| | ) | Patrick F. Lustig, |
|     Defendant-Appellee.) | ) | Judge Presiding. |

**Opinion Filed:**     March 27, 2017

**Justice:**     Honorable Sheldon A. Harris, J.

    Honorable Maureen E. Connors, P.J., and
    Honorable John B. Simon, J.,
    Concur

**Attorney**
**for**
**Appellant**
    Costello, McMahon, Burke & Murphy, Ltd., 150 North Wacker Drive,
Suite 3050, Chicago, IL 60606, (Paul M. McMahon and
James P. Costello, of counsel),
- *Plaintiff-Appellant*.

**Attorney**
**for**
**Appellee**
    Law Office of Corey C. Splitt, 400 East Diehl Road, Suite 310,
Naperville, IL 60563, (Corey C. Splitt, of counsel),
- *Defendant-Appellee*.

No. 1-16-1856

2017 IL App (1st) 161856

FIRST DIVISION
March 27, 2017

No. 1-16-1856

| | | |
|---|---|---|
| ROGER KNOUSE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| REJAT MOHAMEDNUR, SANTORINI FIVE | ) | |
| CAB CORP., and GLOBE TAXI ASSOCIATION, | ) | No. 12 L 13388 |
| INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Rejat Mohamednur, | ) | Honorable |
| | ) | Patrick F. Lustig, |
| Defendant-Appellee.) | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Roger Knouse, appeals the circuit court's order granting defendant Rejat Mohamednur's motion to have the $69,611.07 judgment against defendant declared satisfied through prior medical payments already received by plaintiff and $100,000 in uninsured motorist coverage recoverable by plaintiff. On appeal, plaintiff contends that the trial court erred because, in declaring the judgment against defendant satisfied, the court improperly determined that plaintiff had a claim under the uninsured motorist provision of his insurance policy. For the following reasons, we reverse and remand for further proceedings.

No. 1-16-1856

¶ 2                                JURISDICTION

¶ 3    The trial court entered its order declaring the judgment against defendant satisfied on June 1, 2016. Plaintiff filed a notice of appeal on June 29, 2016. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994), and 303 (eff. Jan. 1, 2015), governing appeals from final judgments entered below.

¶ 4                                BACKGROUND

¶ 5    The following facts are relevant to this appeal. On December 19, 2010, plaintiff, an Indiana resident, was injured when he attempted to enter a taxi cab on North Water Street in Chicago. Defendant, an Illinois resident, was the driver of the taxi. Plaintiff suffered injuries and incurred $5,111.07 in medical expenses. On November 28, 2012, plaintiff filed a complaint against defendant, Santorini Five Cab Corp. (Santorini), and Globe Taxi Association, Inc. (Globe Taxi). Plaintiff voluntarily dismissed Santorini and Globe Taxi, and the cause proceeded to jury trial against defendant.

¶ 6    When the accident occurred in 2010, defendant was covered under a liability insurance policy issued by Ullico Casualty Company (Ullico). Ullico became insolvent and was liquidated on May 30, 2013. Due to Ullico's insolvency, the Illinois Insurance Guaranty Fund (Guaranty Fund) assumed the defense of plaintiff's complaint. On November 8, 2013, defendant filed his appearance and answer to plaintiff's complaint. As part of discovery, defendant served plaintiff with special interrogatories regarding insurance coverage. In his answer, plaintiff stated that he had an automobile insurance policy "which did not cover an accident of this nature."

¶ 7    At the time of the occurrence, plaintiff was covered under an automobile liability policy issued by State Farm Insurance (State Farm). The State Farm policy subsequently made $4,247.73 in payments toward plaintiff's claimed medical expenses. The policy also provided

uninsured motor vehicle coverage of up to $100,000 per person for each occurrence. The policy provided that:

> "*Uninsured Motor Vehicle* means a land motor vehicle:
>
> 1. the ownership, maintenance, and use of which is:
>
> a. not insured or bonded for liability at the time of the accident; or
>
> b. insured or bonded for liability at the time of the accident; but
>
> * * *
>
> (2) the insuring company:
>
> * * *
>
> (b) is or becomes insolvent within two years after the date of the
>
> accident * * *."

Thus, plaintiff's State Farm policy covered uninsured motor vehicle claims due to the insolvency of defendant's insurer only if the insurer became insolvent within two years of the accident. Plaintiff's State Farm policy also provided that "[w]ithout regard to choice of law rules," the law of "Indiana will control" where a conflict exists "as to the interpretation and application of" the policy.

¶ 8       On June 2, 2014, the trial court granted defendant leave to file his second affirmative defense to plaintiff's complaint. In his second affirmative defense, defendant alleged that under Illinois law plaintiff must first exhaust all recoverable insurance coverage prior to satisfying a claim through the Guaranty Fund. Defendant further alleged that, as the insured of an insolvent insurer now represented by the Guaranty Fund, his liability should be reduced by the full limit of uninsured motor vehicle coverage recoverable under plaintiff's State Farm policy. Defendant filed a third amended affirmative defense to reflect the fact that State Farm paid plaintiff's

medical bills. Although defendant requested a determination of this issue prior to trial, the court continued the matter and the case proceeded to trial.

¶ 9      On January 13, 2016, the jury returned a verdict in favor of plaintiff in the amount of $69,611.07. Defendant filed a motion seeking satisfaction and release of the judgment against him, arguing that his liability should be reduced by $104,247.73, which represents the amount of other insurance recoverable by plaintiff and payments State Farm already made to plaintiff. In his answer, plaintiff did not challenge the offset of payments already made to him by State Farm. He did object, however, to reducing defendant's liability by the $100,000 limit of uninsured motor vehicle coverage under his State Farm policy because Indiana law, and the terms of his policy, bar plaintiff from recovering under that provision. Plaintiff's State Farm policy provides uninsured motor vehicle coverage only if defendant's insurance company became insolvent within two years of the occurrence. In this case, Ullico became insolvent more than 29 months after the occurrence.

¶ 10     The trial court found that under section 27-7-5-4(c) of the Indiana Code (Ind. Code § 27-7-5-4(c) (2010)), when the insurer subsequently becomes insolvent, an insured may make a claim under the uninsured motor vehicle provision of his policy only if the insurer became insolvent within two years of the occurrence. However, the court found that under Illinois law no such limitation existed, and instead such limitations "are deemed to be contra public policy." Finding a conflict of laws, the trial court noted that whether Illinois or Indiana law applies depends "upon whether the matter is procedural or substantive." The court, quoting *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 71, determined that this was a statute of limitations issue, statutes of limitation are procedural and " 'procedural issues are governed by the law of the forum state regardless of the parties' contractual choice of law

provisions.' " Therefore, the trial court applied Illinois law and found that plaintiff was not time-barred from filing an uninsured motor vehicle claim under his State Farm policy.[1]

¶ 11    The trial court then determined whether section 546(a) of the Illinois Insurance Code (Code) (215 ILCS 5/546(a) (West Supp. 2015)) required reduction of defendant's liability by the $100,000 uninsured motor vehicle coverage limit of plaintiff's State Farm policy. The court reasoned that the Guaranty Fund is "a source of last resort," and section 546(a) requires plaintiff to "collect[ ] as much as he can under his uninsured motorist coverage." The amount recoverable "is deemed to be the applicable policy limit." Since the trial court had found that under Illinois law plaintiff was not time-barred from filing a claim under the uninsured motor vehicle provision of his State Farm policy, it concluded that plaintiff violated the statutory requirements of section 546(a) and "[a]ccordingly, the defendant is entitled to a set-off against the judgment equal to the limits of plaintiff's uninsured motorist coverage." The court found defendant's $69,611.07 judgment liability satisfied based on the $104,247.73 total reduction for payments already collected by plaintiff and for other insurance recoverable by plaintiff. Plaintiff filed this timely appeal.

¶ 12                                          ANALYSIS

¶ 13    First we consider defendant's motion, taken with the case, in which he requests that this court strike plaintiff's reply brief for raising issues for the first time and strike the affidavit of plaintiff's attorney attached to the reply brief. The affidavit was not part of the record filed on

---

[1]See *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 393-94 (2006) (under Illinois law, such a provision limiting uninsured motor vehicle coverage is unenforceable as against public policy). In order to give full and reasonable effect to policy terms as written, as well as satisfy Illinois's desire to offer broad protection against uninsured motorists, Illinois courts use the discovery rule and apply the time limitation only after plaintiff discovers the insolvency. *Coronet Insurance Co. v. Ferrill*, 134 Ill. App. 3d 483, 488 (1985).

appeal. Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006) states that if appellant needs to supplement the record on appeal, he must prepare and file "a bound and certified supplemental record which shall be filed in the reviewing court upon order issued pursuant to motion." Plaintiff did not file a motion in this court to supplement the record with the affidavit, nor did he present the affidavit as a "bound and certified supplemental record" as required by Rule 329. Therefore, we strike the affidavit and will not consider it on appeal. Although we deny defendant's motion to strike plaintiff's reply brief, we disregard any issues that plaintiff raises for the first time in the reply brief in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) ("[p]oints not argued are waived and shall not be raised in the reply brief").

¶ 14    On appeal, plaintiff contends that the trial court erred in using the $100,000 limit of his State Farm uninsured motor vehicle coverage to offset the amount he could recover from the Guaranty Fund. In making its determination, the trial court interpreted section 546(a) of the Code, which provides that before plaintiff can recover from the Guaranty Fund, he must first "exhaust all coverage provided by any other insurance policy *** if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund. The Fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy. Where such other insurance policy provides uninsured or underinsured motorist coverage, the amount recoverable shall be deemed to be the full applicable limits of such coverage." 215 ILCS 5/546(a) (West Supp. 2015). The trial court found that the uninsured motor vehicle limit of plaintiff's State Farm policy was an amount recoverable "under such other insurance policy." When interpreting the provisions of a statute, this court's primary objective is to ascertain and give effect to legislative intent. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). The most reliable indicator of legislative intent is the

clear language of the statute, given its plain and ordinary meaning. *Id*. We review the trial court's interpretation of a statute *de novo*. *Barbara's Sales, Inc. v. Intel Corp*., 227 Ill. 2d 45, 57-58 (2007).

¶ 15    The Code established the Guaranty Fund "to protect policyholders of insolvent insurers and third parties who make claims under policies issued by insurers that become insolvent." *Roth v. Illinois Insurance Guaranty Fund*, 366 Ill. App. 3d 787, 794 (2006). The Guaranty Fund's members consist of all insurance companies authorized to transact business in Illinois. *IPF Recovery Co. v. Illinois Insurance Guaranty Fund*, 356 Ill. App. 3d 658, 663 (2005). These Illinois insurers must contribute to the fund in direct proportion to their premium income and these contributions "are passed along to the insurance-buying public in the form of higher premiums." *Norberg v. Centex Homes Corp*., 247 Ill. App. 3d 267, 274 (1993). In creating the Guaranty Fund, the legislature wanted to prevent use of the fund's assets "to reimburse solvent insurance companies for payments made to claimants or their insured under policies for which they received a premium." *Pierre v. Davis*, 165 Ill. App. 3d 759, 761 (1987). Therefore, the Guaranty Fund "is a recovery of last resort" and in order to recover from the fund, the claimant must "first seek to cover his loss with funds available from other insurers." *Hasemann v. White*, 177 Ill. 2d 414, 420-21 (1997). Furthermore, allowing the Guaranty Fund to reduce its obligation by the amount recovered or recoverable under other policies "avoids duplicative and windfall recoveries." *Id*. at 420.

¶ 16    Since plaintiff must "exhaust all coverage provided by another insurance policy" for his claim before recovering from the Guaranty Fund under section 546(a), we must determine whether plaintiff's State Farm policy affords such coverage within the meaning of the statute. We find *Virginia Surety Co. v. Adjustable Forms, Inc.*, 382 Ill. App. 3d 663 (2008), instructive.

In that case, the property owner subcontracted employees from Adjustable Forms, Inc. (Adjustable Forms), to work on a project and the owner also provided worker's compensation insurance covering the subcontracted employees while they worked on the project. A subcontracted employee subsequently suffered injuries at the work site and filed a worker's compensation claim that was covered by the owner's insurance. After the owner's insurer became insolvent, the Guaranty Fund "stepped into" the shoes of the insolvent insurer and made payments for the subcontracted employee's covered claims. *Id.* at 665. However, after making the payments, the Guaranty Fund sought reimbursement from the insurer of Adjustable Forms, arguing that the policy it issued to Adjustable Forms for worker's compensation coverage was "other coverage" that must be exhausted before recovery from the Guaranty Fund. *Id.* at 666.

¶ 17    The court first determined whether the policy issued by Adjustable Forms' insurer, Virginia Surety, provided coverage for the employee's claim. It found that Adjustable Forms participated in and was covered under the policy the now-insolvent insurer issued to the project's owners, Adjustable Forms informed Virginia Surety of this coverage under the project, and Virginia Surety subsequently returned the premiums Adjustable Forms paid to cover the project work sites to reflect the exclusion of those employees from payroll. *Id.* at 668-69. The court reviewed the Virginia Surety policy, interpreting the terms used according to "their plain, ordinary, and popular meaning." *Id*. at 669. In particular, it looked at the provision stating that the policy covers all listed workplaces " 'unless you have other insurance or are self-insured for such workplaces.' " *Id*. The court found that, although Virginia Surety did issue a policy providing workers' compensation coverage to Adjustable Forms, under the plain language of the policy it did not include coverage for employees the company subcontracted out to work on the project. *Id*.

¶ 18    Finding that the Virginia Surety policy did not provide coverage for the injured employee's claim, the court then addressed whether the policy nonetheless qualified as "other insurance" that must be exhausted before seeking recovery from the Guaranty Fund. The court acknowledged the general policy underlying the Guaranty Fund that " 'potential claims against the Fund's assets should be reduced by a solvent insurer, rather than the Fund.' " *Id*. at 671 (quoting *Harrell v. Reliable Insurance Co*., 258 Ill. App. 3d 728, 731 (1994)). It found, however, that Virginia Surety in this situation was not a solvent insurer under the statute because it did not collect and retain a premium from Adjustable Forms for workers' compensation coverage of employees subcontracted out to the project work site. *Id*. Therefore, the Virginia Surety policy was not "other insurance" for purposes of the Guaranty Fund. See also *Illinois Insurance Guaranty Fund v. Virginia Surety Co., Inc*., 2012 IL App (1st) 113758, ¶ 23 (policy at issue not "other insurance" because it did not provide coverage of the injured employee's claim).

¶ 19    Following *Adjustable Forms*, we look at the terms of plaintiff's State Farm policy, given their plain and ordinary meaning, to determine whether the policy provides coverage for plaintiff's claim. Plaintiff was injured in December 2010, and filed his claim against defendant in November 2012. At the time, defendant was insured by Ullico. Ullico became insolvent on May 30, 2013, and the Guaranty Fund assumed the defense against plaintiff's claim.

¶ 20    Plaintiff's State Farm policy provides coverage for claims against an "uninsured motor vehicle," defined as a vehicle "insured or bonded for liability at the time of the accident" but the insuring company "is or becomes insolvent within two years after the date of the accident." Plaintiff's policy, which he obtained in Indiana as an Indiana resident, conforms to section 27-7-5-4(c) of the Indiana Code that "[a]n insurer's insolvency protection applies only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is

in effect and where the liability insurer of the tortfeasor becomes insolvent within two (2) years after such an accident." Ind. Code § 27-7-5-4(c) (2010). Since Ullico became insolvent more than two years after the date of the accident, the unambiguous terms of plaintiff's State Farm policy do not provide uninsured motor vehicle coverage here. Accordingly, this policy is not "other insurance" within the meaning of section 546(a) of the Code. See *Virginia Surety*, 2012 IL App (1st) 113758, ¶ 23; *Adjustable Forms*, 382 Ill. App. 3d at 671.

¶ 21     Defendant, however, argues that the issue on appeal is whether "the Indiana two year statute of limitation for an uninsured motorist claim due to the insolvency of the tortfeasor's insurer is applicable in Illinois." Since this provision of the Indiana Code, as written, is unenforceable in Illinois for public policy reasons, defendant contends that courts should conduct a conflict of law analysis to determine which law to apply in finding whether plaintiff satisfied the requirements of section 546(a). Although Illinois and Indiana law do differ in this regard, we disagree that a conflict of law analysis is proper here. Defendant argued in his motion for satisfaction and release from judgment that State Farm's uninsured motor vehicle coverage applied under section 546(a), and plaintiff was required to exhaust this coverage before seeking recovery from the Guaranty Fund. Therefore, the relevant issue before us is whether plaintiff's State Farm policy is "other insurance" providing coverage for plaintiff's claim within the meaning of section 546(a) of the Code. The question at this point is purely one of statutory interpretation—what constitutes "other insurance" under section 546(a)—without need to consider conflicts of law.

¶ 22     Furthermore, if we find that, pursuant to Illinois public policy, plaintiff should have filed a claim under his State Farm policy, plaintiff would then have to exhaust this coverage before recovering from the Guaranty Fund. Defendant's position that Illinois public policy can negate

unambiguous provisions of a policy that are valid and enforceable in another state would force plaintiffs in this situation to pursue all potential claims for coverage, even if the clear terms of the policy preclude coverage, in order to satisfy the exhaustion requirement of section 546(a).[2] Nothing in the language of section 546(a) supports defendant's argument. Section 546(a) states that a claimant must first "exhaust all coverage provided by any other insurance policy" before recovering from the Guaranty Fund, and "[w]here such other insurance policy provides uninsured or underinsured motorist coverage, the amount recoverable shall be deemed to be the full applicable limits of such coverage." 215 ILCS 5/546(a) (West Supp. 2015). The plain language of this section refers only to coverage provided by another insurance policy and, as *Adjustable Forms* and *Virginia Surety* found, the relevant issue is simply whether the policy the Guaranty Fund seeks to use as "other insurance" provides coverage for plaintiff's claim. "Where an enactment is clear and unambiguous, we are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006).

¶ 23 Our determination that plaintiff's State Farm policy is not "any other insurance" within the meaning of section 546(a) also does not conflict with the policies underlying the creation of the Guaranty Fund. Plaintiff's policy does not provide coverage for this claim, so recovery from the fund would not reimburse a solvent insurer for payments that would be made under a policy for which premiums were paid. See *Adjustable Forms*, 382 Ill. App. 3d at 671-72. Since plaintiff has no other policy that provides coverage for his claim here, recovery from the Guaranty Fund would not be a duplicative or windfall recovery. Our decision also supports the purpose of the

---

[2]See *Burton v. Ramos*, 341 Ill. App. 3d 122, 126 (2003) (plaintiff who failed to file a timely claim for uninsured motorist coverage was assumed to have received the policy limits of her coverage).

Guaranty Fund "to place claimants in the same position that they would have been in if the liability insurer had not become insolvent." *Lucas v. Illinois Insurance Guaranty Fund*, 52 Ill. App. 3d 237, 239 (1977).

¶ 24    Moreover, to find that plaintiff's State Farm policy provides coverage here for purposes of section 546(a) would effectively preclude plaintiff from recovery contrary to the purposes of Illinois uninsured motor vehicle law. Illinois public policy requires uninsured motorist coverage in order to place the insured in substantially the same position as if the uninsured tortfeasor had been minimally insured. See *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 390 (2006). But if we had found that plaintiff's State Farm policy provides coverage here, against the clear terms of the policy no less, the Guaranty Fund could offset the $100,000 limit of plaintiff's State Farm policy against the $69,611.07 judgment the jury awarded him, and plaintiff would receive nothing as a result. Defendant argues that plaintiff could bring a cause of action in Illinois for coverage under his State Farm policy, which was obtained in Indiana by an Indiana resident and follows Indiana law, but whether plaintiff would prevail on such a claim is mere speculation. We find that our determination here better serves the policies underlying both the Guaranty Fund and Illinois uninsured motorist law.

¶ 25    For the foregoing reasons, the judgment of the circuit court is reversed, and the cause remanded for further proceedings consistent with this opinion.

¶ 26    Reversed and remanded.